IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 22, 2010

## STATE OF TENNESSEE v. CLAUDE DAVID MERRITT

**Appeal from the Circuit Court for Bedford County**
**No. 16813      Robert Crigler, Judge**

_____

**No. M2010-00181-CCA-R3-CD - Filed October 29, 2010**

_____

The Defendant, Claude David Merritt, entered an "open" guilty plea to one count of aggravated vehicular homicide, a Class A felony. See Tenn. Code Ann. § 39-13-218(d). The trial court sentenced him as a Range II, multiple offender to forty years in the Department of Correction. In this appeal, the Defendant asserts that his sentence is excessive. After a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Claude David Merritt.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

On May 18, 2009, a Bedford County grand jury indicted the Defendant for one count of aggravated vehicular homicide, two counts of reckless endangerment, and one count of driving with a revoked license. On October 30, 2009, the Defendant entered an "open" guilty plea to the aggravated vehicular homicide charge, in exchange for the dismissal of the three other counts of the indictment. During the plea acceptance hearing, the State summarized the facts underlying the aggravated vehicular homicide charge as follows:

The factual basis for this case, the events, most of the events occurred on October 17, 2008.

On that date[,] a vehicle driven by Mr. James Hill and occupied by Susan Martin and Ms. Martin's elderly mother Mildred [Misch] was southbound on Highway 231 North . . . when a vehicle that was headed northbound on 231 turned in their path. It caused a massive collision. The vehicle driven by Mr. Hill, there was absolutely no way he could avoid the collision.

It caused pretty significant injuries to Mr. Hill and Ms. Martin. They were knocked unconscious.

Mr. Hill's recollection is the next thing he remembers is he is laying on the ground outside of his vehicle being tended to by emergency personnel.

Ms. Martin doesn't remember hardly much else after that.

Ms. Misch was unconscious at the scene and had to be LifeFlighted to Vanderbilt Hospital. She had significant life threatening injuries to her.

The vehicle that caused the accident was a mini van driven by the [D]efendant. He had turned in front of the path of the Hill vehicle. He, too, was examined at the scene and was taken to the hospital just to be checked out.

The officer at the scene noticed that the [D]efendant smelled of alcohol; appeared to be under the influence. In the hospital[,] he admitted to consuming multiple beers before getting behind the wheel and he did consent to a blood alcohol test being done on him.

. . . .

[T]he blood sample was sent to the TBI crime lab. It was determined the [D]efendant had a blood alcohol level of .11. There was [a] toxicology report done. He [had] Diazepam and metabolized Diazepam in his system. He had a mixture of alcohol and Diazepam in his system.

Again[,] Mr. Hill and Ms. Martin had injuries. They were treated at the Bedford County or the Heritage Medical Center and released.

Ms. Misch . . . stayed at Vanderbilt in their Level 1 trauma center, which is equivalent to an intensive care unit[,] from October 17th until October 28th. [She] spent 11 days in intensive care. She never regained consciousness during that period of time. She had significant injuries to her—she had a subarachnoid hemorrhage and subdural hemorrhage to her head. She had a right rib fracture, a right femur fracture, which is the big bone in your leg[,] a left tibia fracture and right hand fifth digit fracture. Her spine was negative for fracture.

As a result of the injuries to her head and brain[,] she developed encephalopathy . . . essentially an injury to her brain.

After spending 11 days in intensive care she was then sent to the Select Specialty Hospital in Nashville and was treated there. She was on a ventilator for a period of time. She was then weaned off of the ventilator. However[,] she was on a feeding tube during her period of time there. She never recovered from her injuries. She stayed at the Select Specialty Hospital in Nashville from October 28, 2008[,] until January 5, 2009. At that point she was transferred back home, which is Michigan, and spent the remainder of her days at a facility known as Brook Haven, which is essentially a nursing home. She was at Brook Haven Nursing [Home] from January 5th, 2009[,] until March 3rd, 2009[,] when she passed away.

. . . .

[Her doctors at Brook Haven and Select Specialty Hospital] both say that all of the conditions which she suffered from after the accident were the direct result of the accident and[,] most notably[,] the doctor who treated her in Michigan for the last two months of her life would say her death was completely attributable to the injuries she received on October 17, 2008[,] as a result of the collision caused by the [D]efendant while intoxicated.

Additionally[,] at the time of the commission of the offense[,] the [D]efendant [had] at least [three prior] DUI convictions[.]

On December 21, 2009, the trial court held the Defendant's sentencing hearing. The only evidence presented was the presentence report and a probation revocation warrant that the State introduced to show the Defendant was on probation at the time of the instant offense. The presentence report reflected that the Defendant was sixty-six years old at the

time of the hearing. The report also contained a statement that the Defendant provided to the probation officer who prepared the presentence report. In his statement, the Defendant claimed that, on the night of the accident, he was driving to the hospital to obtain treatment for an existing medical condition, and that the last thing he remembered was waiting to cross the southbound lane.

The presentence report detailed the Defendant's lengthy criminal record, which spanned over forty years and included convictions for aggravated assault, armed robbery, grand larceny, theft, and felony escape. The report also reflected that the Defendant had four prior driving under the influence (DUI) convictions, three convictions for driving with a revoked license, three assault convictions, three public intoxication convictions, and two convictions for possession of anhydrous ammonia. The report also stated that the Defendant had "a history of probation/parole revocations and escape from custody."

According to the report, the Defendant described that he was in "fair" mental and physical health. He also reported that he suffered from depression, anxiety, an "infectious blood serum disease, chronic obstructive pulmonary disease (COPD)[,] and cirrhosis of the liver." However, he stated that he was not taking any medications for his various ailments. The Defendant also said that he "was certified as disabled in 2001." The Defendant admitted to consuming two to three forty-ounce cans of beer per day, but denied any drug use. The presentence report concluded that the Defendant was in the "high risk/need range," and that his alcohol abuse, "procriminal attitude, and antisocial patterns" needed to be addressed while he was incarcerated.

The State argued that the Defendant's sentence should be enhanced because he had a previous history of criminal violations, the offense involved more than one victim, the victim was particularly vulnerable because of her age, great injury was inflicted on the victim, the Defendant had previously failed to comply with sentencing conditions involving release into the community, he had no hesitation about committing a crime when the risk to human life was high, and the Defendant committed this offense while on probation. The Defendant argued that because the two counts of reckless endangerment—which referred to victims Mr. Hill and Ms. Martin—had been dismissed, then the trial court should not consider that the offense for which was being sentenced involved more than one victim. The Defendant also contended that the fact that the victim's injuries were great was already taken into account by the aggravated vehicular homicide statute and that the trial court should not enhance the Defendant's sentence using that factor. The Defendant did not contend that any mitigating factors applied, but argued that the trial court should take into consideration the Defendant's age, health problems, and the fact that some of his most serious felony convictions were decades old.

After hearing the evidence presented, the trial court determined that the Defendant was a Range II, multiple offender based on the Defendant's prior aggravated assault and armed robbery convictions, and sentenced him to forty years of incarceration. He now appeals.

**Analysis**

The Defendant contends that the forty-year sentence imposed by the trial court was "excessive given the facts and circumstances of this case." He does not argue that any of the enhancement factors were applied incorrectly. He only contends that, because he was sixty-six years old at the time of sentencing, his sentence should be lowered to twenty-five years so that he has "an incentive to work to clean up his life," in keeping with the goal of rehabilitation.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999); see also State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 254 S.W.3d at 344-45.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

The Defendant pleaded guilty to aggravated vehicular homicide, which is a Class A felony. See Tenn. Code Ann. § 39-13-218(d). As a Range II, multiple offender the Defendant's sentencing range was twenty-five to forty years. See Tenn. Code Ann. § 40-35-112(b)(1). The trial court imposed an enhanced sentence of forty years.

The Defendant's conduct occurred subsequent to the enactment of the 2005 amendments to the Sentencing Act, which became effective June 7, 2005. The amended statute no longer imposes a presumptive sentence. Carter, 254 S.W.3d at 343. As further explained by our supreme court in Carter,

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." [Tenn. Code Ann.] § 40-35-210(d). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," [Tenn. Code Ann.] § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," [Tenn. Code Ann.] § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," [Tenn. Code Ann.] § 40-35-103(5).

Id. (footnote omitted).

The 2005 Amendment to the Sentencing Act deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered these factors merely advisory, as opposed to binding, upon the trial court's sentencing decision. Id. Under current sentencing law, the trial court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. Id. at 344. The trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. Id. Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increases the amount of discretion a trial court exercises when imposing a sentencing term. Id. at 344.

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See id. at 343; State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001). If our review reflects that the trial court applied inappropriate mitigating

and/or enhancement factors or otherwise failed to follow the Sentencing Act, the presumption of correctness fails and our review is de novo. Carter, 254 S.W.3d at 345.

In setting the Defendant's sentence at forty years, the trial court applied the following enhancement factors: (1) The Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; (3) The offense involved more than one victim; (4) A victim of the offense was particularly vulnerable because of age or physical or mental disability; (8) The Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; (10) The Defendant had no hesitation about committing a crime when the risk to human life was high; and (13) At the time the felony was committed, the Defendant was released on probation. See Tenn. Code Ann. § 40-35-114(1), (3), (4), (8), (10), & (13). The trial court appears to have given great weight to enhancement factor (1), commenting that it alone was sufficient to support the imposition of a forty-year sentence.

Even though the Defendant did not raise this issue in his brief, we note that the trial court incorrectly applied enhancement factor (3) to this offense, aggravated vehicular homicide. The trial court erroneously stated that, because the reckless endangerment charges referring to victims Mr. Hill and Ms. Martin were dismissed, it could consider them victims of this offense. Our supreme court has held that when there is a specific named victim of an offense, it is inappropriate to consider that there were multiple victims and apply enhancement factor (3). See State v. Imfeld, 70 S.W.3d 698, 705-06 (Tenn. 2002) ("In short, there cannot be multiple victims for any one offense of aggravated assault committed against a specific, named victim."). In the instant case, although Mr. Hill and Ms. Martin were also in the vehicle at the time of the crash, it is not appropriate to apply enhancement factor (3) because Ms. Misch was the only named victim of the aggravated vehicular homicide charge.

However, the trial court correctly applied the other five enhancement factors. In addition to the felonies used to establish the Defendant's range, the Defendant had a lengthy criminal history including grand larceny, felony theft, felony escape, four prior DUI convictions, three convictions for driving with a revoked license, three assault convictions, three public intoxication convictions, and two convictions for possession of anhydrous ammonia. The trial court also noted that at the time of the instant offense, the Defendant was on probation.[1] Ms. Misch, who was eighty-four years old at the time of the crash, had

_____

[1] On July 18, 2007, the Defendant received a sentence of eleven months and twenty-nine days for the offenses of DUI and driving with a revoked license. On July 16, 2008, a probation revocation warrant was issued, alleging that the Defendant failed to pay mandatory fines and court costs and that he failed to attend and complete his DUI classes. The Defendant was not served with the probation revocation warrant,

(continued...)

utilized a wheelchair and lived in a nursing home before the accident. The trial court properly considered that she was particularly vulnerable because of her age or physical disability. Furthermore, the trial court found that the Defendant had no hesitation about committing a crime when the risk to human life was high, noting that Mr. Hill and Ms. Martin were also in the vehicle at the time of the collision. Finally, the trial court properly noted that the Defendant had been released on parole or probation numerous times over his forty-plus years of criminal activity, and that his criminal record revealed that his probation or parole had been revoked on four different occasions.

Although the trial court did incorrectly apply enhancement factor (3), the record supports the trial court's finding of the remaining five enhancement factors, which are sufficient to justify the enhancement of the Defendant's sentence.

**Conclusion**

Based on the foregoing authorities and reasoning, we conclude that the forty-year sentence imposed by the trial court was not excessive. The judgment of the Bedford County Circuit Court is affirmed.

_____

DAVID H. WELLES, JUDGE

---

[1](...continued)
however, until after the instant offense occurred. Our courts have held that the expiration of a term of probation is tolled by the filing of a probation revocation warrant and that "the probationary term remains in effect until the trial court rules on the violation warrant." State v. Anthony, 109 S.W.3d 377, 382 (Tenn. Crim. App. 2001); see also Alder v. State, 108 S.W.3d 263, 267 (Tenn. Crim. App. 2002) ("[I]f a probation revocation warrant is issued within the term of probation, it tolls the limitation of time in which the court may act to revoke probation.").